1

2

3

4

5

6

7

8             IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MARCELLUS ATKINSON,

11           Plaintiff,                    No. CIV S-06-2652 RRB EFB P

12       vs.

13   DR. KOFOED, et al.,                   ORDER AND FINDINGS AND
                                           RECOMMENDATIONS
14           Defendants.

15   _____/

16       Plaintiff is a prisoner without counsel suing for alleged civil rights violations. *See* 42

17   U.S.C. § 1983.  This action proceeds on the November 21, 2006, complaint which claims

18   deliberate indifference to a serious medical need in violation of the Eighth Amendment.

19   Specifically, plaintiff claims that defendant Dr. Kofoed knew plaintiff had fractured his right

20   wrist and that it had not properly healed, but failed to treat this condition.  Compl., at 3.  The

21   matter is now before on the sole defendant, Dr. Kofoed's motion for summary judgment.  For the

22   reasons explained below, the court finds that there is no genuine issue of material fact and that

23   summary judgment must be granted.

24   ////

25   ////

26   ////

1

1  **I.      Defendant's Objections to Plaintiff's Evidence**

2          Plaintiff's opposition to the motion for summary judgment includes 15 exhibits, all of

3  which purport to be medical and other records from his prison file.  Defendant Kofoed requests

4  the court to exclude these exhibits from consideration.  In support of this request, he makes three

5  arguments.  First, he argues that plaintiff failed to produce or disclose these documents in

6  response to Dr. Kofoed's discovery requests.  Second, Dr. Kofoed argues that the documents are

7  unauthenticated and constitute inadmissible hearsay.  As explained below, with respect to his

8  first objection, defendant failed to file a motion to compel the production of the documents to

9  which he now objects.  Furthermore, he relies on discovery rules that do not apply here.  As to

10  his arguments about hearsay and authentication, the court finds that Dr. Kofoed fails to support

11  these objections with any argument that would justify exclusion of the records.  Thus, the

12  objections are overruled.

13          Defendant Kofoed's first objection is that since plaintiff failed to respond to a request for

14  the production of documents, the court should sanction him by not permitting him to rely on any

15  documents that were responsive to the requests.  In support of his argument, Dr. Kofoed relies on

16  Rule 37(c)(1) of the Federal Rules of Civil Procedure, which states the potential sanctions for the

17  failure to comply with the initial disclosure requirements of Rule 26.  The rule provides that:

18          A party that without substantial justification fails to disclose information required
          by rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by
19          Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence
          at a trial, at a hearing, or on a motion any witness or information not so disclosed.
20

21  Fed. R. Civ. P. 37(c)(1).  This action is exempt from the mandatory disclosures listed in Rule

22  26(a)(1) because plaintiff is a prisoner suing California officials about the conditions of his

23  confinement.  *See* Fed. R. Civ. P. 26(a)(1)(E)(iv).  Rule 26(a)(2) governs automatic disclosure of

24  information pertaining to expert testimony.  Fed. R. Civ. P. 26(a)(2).  There is no evidence that

25  plaintiff has retained an expert from whom he intends to elicit evidence at trial.  Rule 26(a)(3)

26  governs pretrial disclosures, which, "[u]nless otherwise directed by the court," must be made no

1   later than 30 days before trial.  Fed. R. Civ. P. 26(a)(3).  However, no trial date has been set in

2   this action.  Accordingly, Kofoed has not shown that plaintiff failed to make the disclosures

3   required in any portion of Rule 26(a) that might apply to this action.  Nor can Kofoed show that

4   plaintiff has violated Rule 26(e).  This portion of the rule requires a party who has made

5   mandatory disclosures or has responded to a discovery request to "supplement or correct the

6   disclosure or response to include information thereafter acquired," either if a court so orders or if

7   certain circumstances described in subdivision (1) or (2).  Fed. R. Civ. P. 26(e)(1), (2).  As

8   noted, plaintiff was not required to make any mandatory disclosures, and he therefore could not

9   have failed to supplement them.  Crucial here is the basis of defendant's objection, i.e., *that*

10  *plaintiff did not respond to discovery requests*.  Defendant has submitted evidence that on April

11  23, 2007, he served on plaintiff interrogatories and a request for production of documents.

12  Def.'s Objs., Exs. A, B.  While there is no evidence that plaintiff responded, neither is there any

13  evidence that defendant attempted to meet and confer about plaintiff's failure to respond.  *See*

14  Fed. R. Civ. P. 37(a)(2)(B).  The remedy when a party fails to respond to properly served, timely

15  discovery requests and refuses to correct the omission through informal means is to file a motion

16  to compel pursuant to Rule 37(a).  The remedy when a party fails to comply with a discovery

17  order resulting from a motion made under Rule 37(a) is to seek sanctions pursuant to Rule 37(b).

18  Defendant Kofoed does not argue that he attempted informally to resolve the discovery dispute

19  or that he sought and obtained an order compelling plaintiff to respond to discovery requests,

20  which plaintiff then disobeyed.  Instead, defendant Kofoed relies upon Rule 37(c), which as

21  explained above, has no application here.  Thus, the court finds that the defendant has not

22  demonstrated any basis for excluding plaintiff's evidence based on a discovery violation.

23      Defendant also argues that plaintiff's evidence should be excluded because plaintiff did

24  not authenticate any of the documents and the documents contain inadmissible hearsay.

25  Although this trend in objecting to every stitch of paper submitted in opposition to a summary

26  judgment motion appears to be becoming all the rage, the practice is simply not helpful.  Absent

1   a specific and legitimate showing that a particular item of evidence is not admissible and its

2   consideration is prejudicial, these scatter shot objections detract from, rather than support one's

3   confidence in the motion.  Plaintiff's evidence and defendant's objections cannot be divorced

4   from the nature of this proceeding, i.e., summary judgment, in which defendant is the moving

5   party.  *See Burch v. Regents of the University of California*, 433 F.Supp.2d 1110, 1118-1124  (E.

6   D. Cal. 2006).  The portion of the rule governing such a motion supported by affidavits and

7   records provides that the affidavits "shall set forth such facts as would be admissible in evidence

8   . . . ."  Fed. R. Civ. P. 56(e).  On summary judgment, the non-moving party's evidence need not

9   be in a form that is admissible at trial.  *See Burch*, 433 F.Supp.2d at 1119 (*citing Celotex Corp.*

10  *v. Catrett*, 477 U.S. 317, 324 (1986)).  Instead, a court is concerned with the admissibility of the

11  contents of the evidence.  *Id.*  Thus, on summary judgment, "objections to the *form* in which the

12  evidence is presented are particularly misguided where, as here, they target the non-moving

13  party's evidence."  *Burch*, 433 F.Supp.2d at 1119.  Accordingly, as long as a party submits

14  evidence which, regardless of its form, may be admissible at trial, it may be considered on

15  summary judgment.  *Id.* at 1120.

16      Turning to defendant Kofoed's objection that plaintiff's evidence lacks a proper

17  foundation or authentication, defendant has not pressed a serious contention that the copies are

18  anything other than what they purport to be; i.e. copies of documents produced from the prison's

19  own records.  In order properly to support or oppose summary judgment, the party relying on

20  affidavits and records must lay a proper foundation.  *Beyne v. Coleman Sec. Servs., Inc.*, 854

21  F.2d 1179, 1182 (9th Cir. 1988).  "[W]hether the authentication requirement should be applied to

22  bar evidence when its authenticity is not actually disputed is, however, questionable."  *Burch*,

23  433 F.Supp.2d at 1120.  "[W]here the objecting party does not contest the authenticity of the

24  evidence submitted, but nevertheless makes an evidentiary objection based on purely procedural

25  grounds," then the court should consider the evidence.  *Id.*  In such a situation, it would appear

26  equally probable that the documents are what they purport to be as it is that they are not.  *See Id.*

4

1    Here, defendant does not actually contest the authenticity of the documents plaintiff has

2    submitted.  Defendant's general objection that plaintiff engaged in a "last minute attempt to

3    'sandbag' defendant with a plethora of new documents and information" is particularly suspect.

4    Def.'s Objs., at 2.  It is notable that all the documents plaintiff submits find their source in the

5    prison system, either in plaintiff's files or elsewhere in the prison bureaucracy.  Furthermore,

6    several appear to be identical to two out of defendant's three exhibits.  *Compare* Pl.'s Opp'n, Ex.

7    2, "Emergency Room Report," to Kofoed Decl., Ex. A, "Emergency Room Report;" Pl.'s Opp'n,

8    Ex. 3 at 2, "First Level Appeal # CSP-S-05-03729" to Kofoed Decl., Ex. B, "First Level Appeal

9    # CSP-S-05-03729."   The court has compared the exhibits listed above and finds no discernable

10   difference, and is confident in finding that plaintiff obtained them from either of two sources: (1)

11   defendant through discovery; or (2) the same source from which defendant obtained his, i.e., the

12   prison.  Thus, if there were a valid basis for contesting their authenticity, defendant Kofoed

13   could unearth and present it.  But he has not.[1]  Therefore, all of defendant's objections for lack of

14   proper foundation and lack of authentication are overruled.

15   Defendant also objects on hearsay grounds.  This objection is overruled for two reasons.

16   The first is the form of the objection.  The second is the nature of the non-moving party's burden

17   on summary judgment.  Defendant's objections are *pro forma* in that he objects to entire

18   documents, not particular statements in the context of a particular material factual dispute.  An

19   objection based on hearsay inherently is bound to the context in which the allegedly

20   objectionable evidence is offered.  *See Burch*, 433 F.Supp.2d at 1122 ("even seemingly

21

22     [1]  The documents appear to come from the prison's own records.  If the prison officials
       have a genuine concern that the plaintiff has taken those copies and altered or forged them in
       some way, defendant has presented no evidence of this.  Moreover, the prison officials or
23     defendant are free to produce the originals, or copies of the originals for comparison.  They have
       not done so and, indeed, the exhibits produced by defendant tend to confirm the authenticity of
24     plaintiff's copies.  Defendant's authentication objection does not appear to be a sincere
       contention that the copies are not true and accurate reproductions of the documents in custody of
25     the prison.  Rather than assist in the process, defendant's objection in this context simply
       undermines the confidence one places in the overall reliability of the motion and its
26     representations.

5

1   appropriate objections based on hearsay and failures to authenticate/lay a foundation are difficult

2   to address away from the dynamics of trial.")  Insofar as a letter or record may on its face

3   constitute hearsay, the particular statements upon which plaintiff relies may very well either be

4   admissible nonetheless or may not be hearsay, depending on the purpose for which plaintiff

5   offers the statement.  "The court is not inclined to comb through these documents, identify

6   potential hearsay, and determine if an exception applies - all without guidance from the parties."

7   *Id.* at 1124.  Thus, to prevail on a hearsay objection, defendant Kofoed must object to particular

8   statements in the context of a material factual dispute and explain the objection.  His failure to do

9   so is sufficient basis for overruling the objection and it hereby is overruled.

10      With respect to the nature of this proceeding, "the court cannot ignore the fact that a non-

11   movant in a summary judgment setting is not attempting to prove its case, but instead seeks only

12   to demonstrate that a question of fact remains for trial."  *Burch*, 433 F.Supp.2d at 1121.  The

13   court thus "treat[s] the opposing party's papers more indulgently than the moving party's

14   papers."  *Id.* (*citing Lew v. Kona Hosp.,* 754 F.2d 1420, 1423 (9th Cir. 1985)).  While a court

15   need not ignore the evidentiary ramifications of a declaration based nearly entirely on hearsay,

16   *see id.* at 1121 (noting that the Ninth Circuit does not uniformly apply the principle of

17   indulgence), it is noteworthy that plaintiff proceeds without counsel.  Furthermore, he does not

18   rely on evidence which on its face presents evidentiary obstacles which would prove

19   insurmountable at trial.  *See Id.* at 1122 (noting that, at trial, "when a party raises valid

20   evidentiary objections, the opposing party will have an opportunity to present the evidence in an

21   alternative and admissible form.").  Insofar as there may be valid hearsay objections, they are

22   better left for trial, if there is to be one.  At a minimum, the objection should be precisely

23   explained in the context of a specific factual dispute so that a meaningful hearsay analysis can be

24   had.

25      For these reasons, the defendant's objections to the plaintiff's evidence submitted in

26   opposition to this motion are overruled.

1  **II.     Facts**[2]

2      At all times relevant to this action, plaintiff was a prisoner confined at California State

3  Prison, Solano ("CSP-Solano").  Def.'s Stmt. of Undisp. Facts ("SUF") 1.  Defendant Dr.

4  Kofoed was a physician who worked for the California Department of Corrections and

5  Rehabilitation, and was assigned to consult on cases at CSP-Solano.  SUF 2.

6      Over the time period relevant to this action, plaintiff has complained to prison officials of

7  various hand and wrist injuries, old and new.  X-rays of May 3, 2005 revealed that plaintiff had an

8  old fracture to the tip of his left finger, which had healed well.  Pl.'s Opp'n, Ex. 5.  These images

9  also showed that plaintiff had an "old fracture with nonunion" in his left hand.  *Id*.  Plaintiff went

10  to the medical clinic on June 9, 2005, complaining he had suffered pain in his left wrist for about

11  three months.  Pl.'s Opp'n, at 6.  He reported that he was unable to rotate it.  *Id.*  B. Naku, who is

12  not a defendant, recommended use of a splint on his left thumb and made an "urgent" request for

13  plaintiff to see an orthopedic specialist.  *Id.*  On June 14, 2005, the request for plaintiff to see an

14  orthopedic specialist was approved.  *Id.*  It is not clear who examined plaintiff in response to this

15  request, but there is a notation that says plaintiff was "Seen ongoing October 31, 2005."  Pl.'s

16  Opp'n, Ex. 6.  On July 8, 2005, B. Naku made another urgent request for plaintiff to be seen by an

17  orthopedic specialist, specifically Dr. Kofoed.  Pl.'s Opp'n, Ex. 7.  This request was granted July

18  14, 2005, and on July 19, 2005, Dr. Kofoed saw plaintiff and administered a cortisone shot.  Def.'s

19  Mot. for Summ. J., Ex. 1, Decl. of Kofoed ("Kofoed Decl."), Ex. B; Pl.'s Opp'n, Ex. 3.  Plaintiff

20  returned to the medical clinic on August 10, 2005, with complaints of left  wrist pain.  Pl.'s Opp'n,

21  Ex. 8.  Dr. Naku noted that plaintiff's wrist was tender.  *Id.*

22      On October 1, 2005, plaintiff reported to the prison medical clinic complaining of severe

23  pain to his right wrist.  *Id*., Ex. 1.  He explained that he had fallen while playing football.  *Id.*  Prison

24  medical staff examined him, finding that his right wrist was swollen, he had difficulty moving his

25

26      [2] Unless otherwise noted, the facts contained herein are undisputed.

1   right wrist, and he was "in obvious pain." *Id.*   He was taken to the emergency room at Queen of

2   the Valley Hospital. *Id.*; Kofoed Decl., Ex. A.  The treating physician there, Dr. Smith, ordered x-

3   rays, leading to a diagnostic impression of, "Distal radius fracture, intraarticular, nondisplaced."

4   Kofoed Decl., Ex. A.  Dr. Smith also prescribed pain medication, splinted plaintiff's arm and gave

5   him a sling. *Id.*  The physician also ordered copies of the x-rays for plaintiff's prison physicians,

6   and recommended an orthopedic follow-up examination and a consultation for applying a cast to

7   plaintiff's wrist. *Id.*  Plaintiff's prison medical records show that he returned to CSP-Solano with

8   the x-rays, splint and a report of his diagnosis.  Pl.'s Opp'n, Ex. 1.

9       The parties agree about the treatment Dr. Kofoed provided to plaintiff for the injury plaintiff

10  sustained on October 1, 2005.  Kofoed Decl., Ex. B; Pl.'s Opp'n, Ex. 3.  The day after the injury,

11  on October 2, 2005, Dr. Kofoed prescribed Motrin and Tylenol # 3.  Kofoed Decl., Ex. B; Pl.'s

12  Opp'n, Ex. 3.  Two days later, on October 4, Dr. Kofoed ordered a cast be applied to plaintiff's wrist

13  the following week. *Id.*  This was done, and Dr. Kofoed saw plaintiff for a follow-up appointment

14  on October 29, 2005, and replaced the cast because plaintiff complained the original was too tight.

15  *Id.*   X-rays of November 8, 2005, showed that the fracture had not completely healed. *Id.*  A

16  physical therapist saw plaintiff on December 6, 2005, but it is unclear whether Dr. Kofoed

17  recommended this evaluation. *Id.*  Thereafter, Dr. Rohrer, who is not a defendant, referred plaintiff

18  back to Queen of the Valley Hospital. *Id.*

19      Dr. Rohrer ordered additional x-rays of plaintiff's right wrist.  Pl.'s Opp'n, Ex. 4.  The report

20  states that the images were taken on February 3, 2005.  Since plaintiff did not injure his right wrist

21  until after this date, and the report states that it was dictated on February 20, 2006, it appears that

22  February 3, 2005, is a typographical error.   The radiologist found that the "fracture of the distal

23  radius has healed."  Pl.'s Opp'n, Ex. 4.  However, "[t]he ulnar styloid still has a small chip adjacent

24  to it" which was "ununited."  Pl.'s Opp'n, Ex. 5.

25      On April 16, 2006, plaintiff returned to Queen of the Valley Hospital with complaints of

26  ongoing right wrist pain and a sensation of numbness and pins and needles "in the ulnar side of the

1 right hand." Pl.'s Opp'n, Ex. 11.  Plaintiff told the treating physician, Dr. Shifflet, that while in his

2 teens, plaintiff's right wrist was cut deeply enough to cut tendons, nerves and blood vessels. *Id.*

3 Dr. Shifflet noted that before October 2005, plaintiff fractured his left wrist, for which prison

4 officials had treated him. *Id.*  He found that plaintiff suffered ulnar neuropathy in his right wrist and

5 hand, but the fracture was healing.  *Id.*  He also had "possible nonunion" of an old fracture in his

6 right hand. *Id.*  Finally, plaintiff had "nonunion" of an old fracture in his left wrist.  *Id.*  Dr. Shifflet

7 recommended that plaintiff see a physician who specializes in hands.  *Id.*

8       On April 27, 2006, plaintiff requested medical attention for pain in both hands and asked

9 about seeing a hand specialist.  Pl.'s Opp'n, Ex. 12.  A nurse examined plaintiff, found he had no

10 swelling but did have decreased range of movement, grip, and strength in both hands.  *Id.*  The nurse

11 referred plaintiff to a physician for a followup referral to a clinic outside the prison.  *Id.*  On

12 September 2006, plaintiff complained that he still had not seen a specialist.  Pl.'s Opp'n, Ex. 14.

13 Prison officials told him that the surgeon to whom he had been referred had "terminated his

14 services," and a new appointment with a different specialist had to be scheduled.  *Id.*

15       Wholly absent from the record is any evidence about how long it ordinarily takes for a distal

16 fracture to heal, whether plaintiff's healing process was unusually long and whether plaintiff had

17 any medical condition, took any medications or engaged in any lifestyle habit that might prolong

18 the healing process.

19 **III.	Standards**

20       Summary judgment pursuant to Fed. R. Civ. P. 56(a) avoids unnecessary trials in cases with

21 no disputed material facts. *See Northwest Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d

22 1468, 1471 (9th Cir. 1994).  At issue is "whether the evidence presents a sufficient disagreement to

23 require submission to a jury or whether it is so one-sided that one party must prevail as a matter of

24 law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

25      Rule 56 serves to screen the latter cases from those which actually require resolution of

26 genuine disputes over facts material to the outcome of the case; e.g., issues that can only be

1    determined through presentation of testimony and evidence at trial such as credibility determinations

2    of conflicting testimony over dispositive facts.

3            In three recent cases, the Supreme Court, by clarifying what the
         non-moving party must do to withstand a motion for summary
4        judgment, has increased the utility of summary judgment. First, the
         Court has made clear that if the non-moving party will bear the
5        burden of proof at trial as to an element essential to its case, and that
         party fails to make a showing sufficient to establish a genuine dispute
6        of fact with respect to the existence of that element, then summary
         judgment is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317
7        (1986). Second, to withstand a motion for summary judgment, the
         non-moving party must show that there are "genuine factual issues
8        that properly can be resolved only by a finder of fact because they
         may reasonably be resolved in favor of either party." *Anderson v.*
9        *Liberty Lobby, Inc*., 477 U.S. 242 (1986) (emphasis added). Finally,
         if the factual context makes the non-moving party's claim
10       implausible, that party must come forward with more persuasive
         evidence than would otherwise be necessary to show that there is a
11       genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio*
         *Corp.*, 475 U.S. 574 (1986). No longer can it be argued that *any*
12       *disagreement* about a material issue of fact precludes the use of
         summary judgment.

13

14   *California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.), *cert. denied*,

15   484 U.S. 1006 (1988) (parallel citations omitted) (emphasis added).  In short, there is no "genuine

16   issue as to material fact," if the non-moving party "fails to make a showing sufficient to establish

17   the existence of an element essential to that party's case, and on which that party will bear the burden

18   of proof at trial."  *Grimes v. City and Country of San Francisco*, 951 F.2d 236, 239 (9th Cir. 1991)

19   (quoting *Celotex*, 477 U.S. at 322).

20        Thus, to overcome summary judgement an opposing party must show a dispute that is both

21   genuine, and involving a fact that makes a difference in the outcome.[3]   Two steps are necessary.

22   First, according to the substantive law, the court must determine what facts are material.  Second,

23   in light of the appropriate standard of proof, the court must determine whether material factual

24   _____

25        [3] On January 10, 2007, the court informed plaintiff of the requirements for opposing a
     motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See Rand v. Rowland*, 154
     F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v.*
26   *Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988).

1    disputes require resolution at trial.  *Id.,* at 248.

2         When the opposing party has the burden of proof on a dispositive issue at trial, the moving

3    party need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National*

4    *Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  The moving party need only point to matters which

5    demonstrate the absence of a genuine material factual issue.  *See Celotex v. Cattret*, 477 U.S. 317,

6    323-24 (1986).

7         If the moving party meets its burden, the burden shifts to the opposing party to establish

8    genuine material factual issues.  *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586.[4]  The opposing

9    party must demonstrate that the disputed facts are material, i.e., facts that might affect the outcome

10   of the suit under the governing law, *see Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pacific*

11   *Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that disputes are genuine, i.e., the

12   parties' differing versions of the truth require resolution at trial, *see T.W. Elec.*, 809 F.2d at 631.

13   There can be no genuine issue as to any material fact where there is a complete failure of proof as to

14   an essential element of the nonmoving party's case because all other facts are thereby rendered

15   immaterial.  *Celotex*, 477 U.S. at 323.  The opposing party may not rest upon the pleadings' mere

16   allegations or denials, but must present evidence of specific disputed facts.  *See Anderson*, 477 U.S.

17   at 248.[5]  Conclusory statements cannot defeat a properly supported summary judgment motion.  *See*

18   *Scott v. Rosenberg*, 702 F.2d 1263, 1271-72 (9th Cir. 1983).

19        The court does not determine witness credibility.  It believes the opposing party's evidence,

20   and draws inferences most favorably for the opposing party.  *See Anderson*, 477 U.S. at 249, 255.

21

22        [4]  The nonmoving party with the burden of proof  "must establish each element of his
claim with significant probative evidence tending to support the complaint."  *Barnett v. Centoni*,
23   31 F.3d 813, 815 (9th Cir. 1994) (internal quotations omitted).  A complete failure of proof on an
essential element of the nonmoving party's case renders all other facts immaterial, and entitles
24   the moving party to summary judgment.  *Celotex*, 477 U.S. at 322.

25        [5]  A verified complaint may be used as an affidavit in opposition to the motion.
*Schroeder v McDonald*, 55 F. 3d 454, 460 (9th Cir. 1995); *McElyea v. Babbitt*, 833 F.2d 196,
26   197-98 (9th Cir. 1987) (per curiam).

11

1 Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a

2 factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*,

3 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322).

4 If reasonable minds could differ on material facts at issue, summary judgment is

5 inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other

6 hand,"[w]here the record taken as a whole could not lead a rational trier of fact to find for the

7 nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation

8 omitted). In that case, the court must grant summary judgment.

9 With these standards in mind, it is important to note that plaintiff bears the burden of proof

10 at trial over the issue raised on this motion, i.e., whether the defendant acted with deliberate

11 indifference to the plaintiff's safety. Equally critical is that "deliberate indifference" is an essential

12 element of plaintiff's cause of action. Therefore, to withstand defendant's motion, plaintiff may not

13 rest on the mere allegations or denials of his pleadings. He must demonstrate a genuine issue for

14 trial, *Valandingham v. Bojorquez*, 866 F.2d 1135, 1142 (9th Cir. 1989), and he  must do so with

15 evidence upon which a fair-minded jury "could return a verdict for [him] on the evidence presented."

16 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252.

17 "As to materiality, the substantive law will identify which facts are material. Only disputes

18 over facts that might affect the outcome of the suit under the governing law will properly preclude

19 the entry of summary judgment." *Id.* at 248. Here, plaintiff's action arises under 42 U.S.C. Section

20 1983 and the Eighth Amendment. To prevail at trial, he must prove that the defendant deprived him

21 of his Eighth Amendment rights while acting under color of state law. To prove an Eighth

22 Amendment violation, plaintiff must show by a preponderance of competent evidence that the

23 defendant knew that plaintiff suffered from a serious medical need and was deliberately indifferent

24 to it. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). As discussed below, plaintiff has failed to establish

25 a genuine dispute for trial over this material issue.

26 ////

**IV.    Analysis**

Plaintiff's only claim is that defendant Kofoed knew plaintiff had fractured his right wrist, knew that it was not healing properly, and failed to take any measures to treat plaintiff for this condition.  Defendant Kofoed contends that there is no genuine issue about whether he was deliberately indifferent to plaintiff's condition, asserting that he provided adequate care to plaintiff. Def.'s Mot. for Summ. J., Ex. 1, Decl. of Kofoed ("Kofoed Decl."), at ¶ 4.  It is undisputed that plaintiff fractured his right wrist on October 1, 2005.  Def.'s Stmt. of Undisp. Facts ("SUF") 4.  It also is undisputed that prison medical staff sent him to an emergency room outside the prison, where plaintiff's wrist was x-rayed.  SUF 5.  The treating physician prescribed medication, applied a splint and gave plaintiff a sling.  SUF 6.  Evidence submitted by both parties shows that plaintiff saw Dr. Kofoed three times for this injury.  SUF 7, 9, 10.  The first time was on October 2, 3005, when defendant Kofoed prescribed anti-inflammatory and pain-killing medications.  SUF 7.  The second time was on October 4, 2005, when Dr. Kofoed ordered a cast for plaintiff's wrist.  Then, four weeks after the cast was applied, Dr. Kofoed examined plaintiff, who complained that the cast was too tight. Dr. Kofoed ordered that cast removed and a new cast applied.  X-rays taken on November 8, 2005, showed that plaintiff's wrist still had not healed, and a doctor who is not a defendant here referred plaintiff back to Queen of the Valley Hospital.  From this evidence, it is readily apparent that Dr. Kofoed was not ignoring or indifferent to plaintiff's medical needs during this period

There is no evidence that Dr. Kofoed examined or treated plaintiff thereafter, or was under any obligation to do so.  Other physicians and medical staff had taken responsibility for plaintiff's care with respect to his wrist injury.  There is no evidence that the treatment Dr. Kofoed provided was constitutionally inadequate or that he ever refused to provide care when he was responsible for doing so. Plaintiff has not produced evidence upon which a reasonable jury could rely to render a verdict for plaintiff that Dr. Kofoed was deliberately indifferent to his medical condition.  Accordingly, the motion for summary judgment must be granted.

////

13

**IV.    Conclusion**

For the reasons explained above, the court finds that defendant's objections to plaintiff's evidence in opposition to the motion for summary judgment are wholly frivolous and must be overruled. However, plaintiff has failed to demonstrate that there is a genuine dispute about whether Dr. Kofoed was deliberately indifferent to his serious medical needs, i.e., the fracture in plaintiff's right wrist.

Accordingly, it hereby is ORDERED that defendant's objections to plaintiff's evidence on summary judgment are overruled.

Further, it is RECOMMENDED that:

1. Defendant's September 20, 2007, motion for summary judgment be granted and that judgment be entered in his favor; and

2. The Clerk be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 22, 2008.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE